IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:21CR408-001 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE LIOI |
| v. | ) | |
| | ) | |
| AQUILEO PEREZ-PINEDA, | ) | |
| | ) | SENTENCING MEMORANDUM |
| Defendant. | ) | OF AQUILEO PEREZ-PINEDA |

I.  Background and Circumstances of the Offenses.

On November 26, 2021, the Defendant, AQUILEO PEREZ-PINEDA, entered a guilty plea to Conspiracy to Manufacture and Possess with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1) and (b)(1)(A), a Class A Felony.

 A presentence investigation was conducted in this case and sentencing is set for March 24, 2022, at 12:00 p.m. in this Court. Pursuant to the terms of the plea agreement, Mr. Perez-Pineda pled guilty to Count One of the Indictment.

The Defendant and the Government established an advisory guideline computation with a based offense level of thirty-eight (38).

The office of the U.S Attorney (U.S.A.O.) recommended a two (2) level increase for specific offense characteristics under §3B1.2, a two (2) level reduction for acceptance of responsibility under USSG §3E1.1(a) and a one (1) level reduction for acceptance of responsibility under USSG §3E1.1(b).

The total offense level after the reduction is a level thirty-seven (37).

II.  <u>Personal History of Aquileo Perez-Pineda.</u>

Aquileo Perez-Pineda was born on January 4, 1970 in Guerrero, Mexico, to Francesca Pineda and Leonnieo Perez. In 1992, Leonnieo Perez, his father, was killed in Mexico as a result of gang related drug violence. His mother, Francesca Pineda, age 75, presently resides in California and looks after her grandchildren. Aquileo Perez-Pineda has 10 siblings, 6 brothers and 4 sisters.

Like Aquileo, all of the siblings work in labor intensive occupations due to the austere circumstances of their upbringing. Their ages and occupations are as follows: Jose Perez-Pineda, age 57, a gardener who lives in California, Marcello Perez-Pineda, age 54, a gardener in Santa Ana, California, Orlando Perez-Pineda, age 50, a gardener in Santa Ana, California, Maria Perez-Pineda, age 48, who lives in Santa Ana, California, Octoria Perez-Pineda, age 46, a farmer in Mexico, Matilde Perez-Pineda, age 44, a house cleaner in Smyrna, Georgia, Aurelia Perez-Pineda, age 42, who works at a restaurant in Smyrna, Georgia, Gilibaldo Perez-Pineda, age 40, a gardener in Santa Ana California, Galdina Perez-Pineda, age 38, who lives in Mexico, and Leonnieo Perez-Pineda, age 32, a farmer in Mexico.

Aquileo Perez-Pineda was raised in Mexico where he and his family traveled throughout the country and resided where there was field or farming work. Mr. Perez reports that life in Mexico was extremely difficult, especially after the death of his father, and states that his family struggled financially, lived in primitive habitations, and often went without utilities.

After the death of his father, Mr. Perez-Pineda felt that his life was in danger, and in 1993 his fear of violence and poverty in Mexico, prompted him and his family to relocate to the United States.

In 2007, Mr. Perez-Pineda married Angelica Penaloza who now resides in Georgia and is unemployed. Mr. Perez-Pineda and Ms. Penaloza have three adult children together. Specifically, two sons and one daughter all of whom reside in Dawsonville, Georgia.

III.    <u>Educational and Employment Background of Aquileo Perez-Pineda.</u>

As a child, Aquileo was unable to attend school consistently. He is the third oldest child in a family of eleven children. As stated above, he has described how the family lived in dire poverty. As young children, he and his older brothers, like himself, worked agriculture jobs to earn money for their parents. He attended the Mexican Revolution School located in Mexico. Having never attended school until age 14, he withdrew at the age of 17 when he was in the 5th grade. Again, he was compelled as a child to earn a meager income to help support his parents' sizeable family. He expresses feeling embarrassment by being a 17-year-old who struggled in classrooms surrounded by other children who were ten years old. He never really learned to read well, and has accordingly, spent his life doing physical labor. Consistent with what he was brought up to do while living in Mexico, he essentially only knows how to work with his body.

Similarly, while in the United States, he worked in gardening in California and construction in Georgia. Mr. Perez-Pineda has spent most of the last 29 years within the United States. Although his presence during that time here was generally as a nonresident alien, he worked legitimate jobs, as well as under the table. Over many years he paid taxes and declared his income. His history during most of that time demonstrates that he provided for his children and avoided involvement with the justice system.

Despite the considerable number of years that Mr. Perez-Pineda has spent within the United States, his ability to speak the English language remains very limited. This may be related to the circumstances of his youth and the absence of educational opportunities.

IV.     Substance Abuse and Mental Health History of Aquileo Perez-Pineda.

As a loving father, Mr. Perez-Pineda has struggled with aspects of depressions as a result of separation from his wife and children. Although the depression has not been clinically diagnosed, he is moody and anxious as he recognizes that he will face extreme prison time and eventual deportation. His stress is exacerbated by the fact that his wife and children live legally within the United States.

Mr. Perez-Pineda began consuming alcohol at the young age of 15. In 1999, he attended Alcoholics Anonymous due to a DUI conviction. He reports experimenting with marijuana at the age of 21. In his 40s, Mr. Perez-Pineda began experimenting with cocaine. Despite limited use of illicit substances, he generally always worked throughout his adult years.

V.      Sentencing Consideration.

Under the authority of United States v. Booker, 543 U.S. 220 (2005), and Gall v. United States, 128 S. Ct. 586, 595-597 (2007), the Federal Sentencing Guidelines are now advisory in nature only, and District Courts are to use their broad discretion in sentencing, first calculating the applicable guidelines range and then considering 18 U.S.C. § 3553(a) factors in reaching sentencing decisions. Under these standards, each case is to be individually considered. 18 U.S.C. § 3553(a) states:

>   (a)  **Factors to be considered in imposing a sentence.** - The Court shall impose a sentence, sufficient but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider -
>        (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
>
>        (2)   the need for the sentence imposed -

- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
- (B) to afford adequate deterrence to criminal conduct;
- (C) to protect the public from further crimes of the defendant; and
- (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for -

- (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines -
  - (i) issues by the Sentencing Commission pursuant to section 994 (a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28;) and
  - (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
- (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issues by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertained policy statement...issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentencing disparities...; and

(7) the need to provide restitution to any victims of the offense.

Under 18 U.S.C. § 3553(a), a sentencing court must "impose a sentence sufficient, but not greater than necessary, to comply" with the purposes of sentencing set forth in the second paragraph of the statute. *See United States v. Shortt*, 485 F.3d 243, 248 (4th Cir. 2007). In undertaking its analysis, the Court must give consideration to the advisory sentencing range recommended by the Guidelines, and any relevant Guideline policy statements, as well as other traditional sentencing factors.

Nearly twenty years after the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), it is now "emphatically clear" that the "Guidelines are guidelines – that is, they are truly advisory." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*). The Guidelines are no longer "the only consideration" at sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). Rather, the Guidelines merely provide a "starting point" for the Court's sentencing considerations. *Id.*; *accord Cunningham v. California*, 549 U.S. 270 (2007). While a sentencing court must consider the Guidelines as a starting point, a court should not presume "that the Guidelines range is reasonable." *Gall*, 552 U.S. at 50. Instead the Court is to impose sentence after "mak[ing] an individualized assessment based on the facts presented" in each particular case. *Id.* Moreover, the Court need *not* find "extraordinary circumstances to justify a sentence outside of the Guidelines range." *Id.* at 47.

As one district court judge has put it, the Guidelines' "most fundamental flaw is the notion that the complexity of human character and conduct can be rationally reduced to some arithmetic formula."[1]

The Supreme Court's decisions in *Gall*, *Cunningham*, and *Kimbrough v. United States*, 552 U.S. 85 (2007), significantly broadened the discretion of courts to impose a less stringent sentence than the one suggested by the Guidelines, and in this case the Court should exercise its

6

broad discretion and impose a sentence substantially below the Guidelines calculated by Probation.

_____

[1] Terry Carter, *Rakoff's stance on the SEC draws fire, praise—and change: The Judge Who Said No*, ABA Journal, Oct. 2013, at 53.

As set forth in Paragraph thirty-seven (37) of the Presentence Report, the total offense level in this case is thirty-seven (37).

18 U.S.C. § 3553(a) factors include "...the nature and circumstances of the offense and the history and characteristics of the defendant." § 3553(a)(1). These have been discussed above.

Various factors are included in § 3553(a)(2). § 3553(a)(2)(A) and include, the need for the sentence imposed - "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." Aquileo Perez-Pineda has pleaded guilty to Conspiracy to Manufacture and Possess with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1) and (b)(1)(A), a Class A Felony.

18 U.S.C. § 3553(a)(2)(B) relates to the need for the sentence imposed to "...afford adequate deterrence to criminal conduct." Aquileo Perez-Pineda expects that the components of any sentence he receives will serve the purposes of this provision.

18 U.S.C. § 3553(a)(2)(C) relates to protecting the public from further crimes. Issues of substance abuse and poverty, have contributed to the conduct giving rise to Mr. Perez-Pineda's criminal behavior. He has accepted responsibility and is prepared to accept the decisions of this Court. In view of his minimal prior criminal history, rehabilitation remains a hopeful option.

18 U.S.C. § 3553(a)(2)(D) involves the need for the sentence imposed - "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Resources are available to assist Mr. Perez-Pineda with

substance abuse treatment, mental health care, self-help counseling, and other necessary services and training. He acknowledges that such programming exists for purposes of successful rehabilitation.

This Court has the authority and discretion to impose a wide range of alternatives to any term of incarceration contemplated by the Guidelines. *See* 18 U.S.C. §§ 3553(a)(3) and 3561(a)(1). A compassionate sentence may be appropriate in this case in light of Mr. Perez-Pineda's remorse for his conduct, his acceptance of responsibility as reflected in his plea agreement, and his minor involvement in the circumstances of this case. In certain ways he appears to be a casualty of the violent drug cartel culture which spans international borders.

Although there are many types of sentences available, the defense respectfully asks that, in fashioning its sentence, the Court to consider that Aquileo Perez-Pineda has already served a significant time during the pendency of this case.

VIII.   Conclusion

It is requested that this Court may derive a sentence which allows counseling, training, and reduces the imposition of lengthy imprisonment.

Aquileo Perez-Pineda is 52 years old and acknowledges that his personal history demonstrates a pattern of involvement with the justice system. It is stated, however, that much of his history is directly connected to conduct involving drugs, violence, and poverty. As indicated above, Mr. Perez-Pineda states that his substance use began when he was 15 years old.

Additionally, he recognizes that he has obligations and responsibility to society and self.

Aquileo Perez-Pineda requests understanding by this Court and expresses his desire to return to his family and society as soon as this Court may allow.

Respectfully submitted,

/s/ Donald R. Hicks
Donald R. Hicks #0034221
Attorney for Defendant
159 South Main Street, Suite 423
Akron, Ohio 44308
donhickslaw@aol.com
(330) 762-5500
(330) 762-2011 Fax

CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of March 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

/s/ Donald R. Hicks
Donald R. Hicks #0034221
Attorney for Defendant