UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:21-cr-408 |
| | ) | |
| Plaintiff, | ) | |
| | ) | CHIEF JUDGE SARA LIOI |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| AQUILEO PEREZ-PINEDA, | ) | |
| | ) | |
| Defendant. | ) | |

Now before the Court is *pro se* defendant Aquileo Perez-Pineda's ("Perez-Pineda" or "defendant") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (hereinafter "§ 2255 Motion") (Doc. No. 44) and his filing styled, "Motion for Authority to File Action to Test Legality of Conviction" (Doc. No. 45). As set forth below, the Court **DENIES** both motions.

I.  **BACKGROUND**

On May 27, 2021, a one-count indictment issued charging Perez-Pineda with conspiracy to manufacture and possess with intent to distribute methamphetamine. (Doc. No. 1.) Specifically, the indictment provided that "[f]rom on or about January 1, 2018 through on or about March 24, 2018 . . . [Perez-Pineda] did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree . . . to manufacture and possess with intent to distribute 500 grams or more

of a mixture and substance containing a detectable amount of methamphetamine[.]" (*Id.* at 1.)[1] With the assistance of counsel and the benefit of a plea agreement, Perez-Pineda entered a guilty plea to the sole charge in the indictment on October 29, 2021. (Minutes of Proceedings [non-document], 10/29/2021; *see* Doc. No. 23 (Plea Agreement).)

On April 29, 2022, the Court sentenced Perez-Pineda to a custody term of 188 months, followed by five years of supervised release. (Doc. No. 35 (Judgment); Minutes of Proceedings [non-document], 4/29/2022.) Perez-Pineda took a direct appeal from the Court's judgment on May 9, 2022. (Doc. No. 37 (Notice of Appeal).) The Court of Appeals for the Sixth Circuit granted the government's motion to dismiss, finding that "[t]he record demonstrates that Perez-Pineda was informed of, and understood, the appellate-waiver provision in his plea agreement" and that Perez-Pineda "cite[d] no other basis on which [the Sixth Circuit] could conclude that his plea was unknowing or involuntary." (Doc. No. 42 (Sixth Circuit Judgment), at 3.) Perez-Pineda filed the present motion to vacate on August 5, 2025. (Doc. No. 44.) Simultaneous with this motion, he also submitted a motion titled "Motion for Authority to File Action to Test Legality of Conviction." (Doc. No. 45.)

## II. STANDARD OF REVIEW

A federal prisoner may attack the validity of his sentence by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 in the district court where he was sentenced. Section 2255 sets forth four grounds upon which a federal prisoner may state a claim for relief: "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2]

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

A petitioner who entered a guilty plea must show an error of constitutional magnitude that had a substantial and injurious effect or influence on the proceedings. *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (2003)). A court may only grant relief under § 2255 if the petitioner demonstrates "'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* at 736 (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)). A petitioner further bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. Vague and conclusory claims which are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A § 2255 motion may be dismissed, without a hearing, if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *See Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961).

When a defendant challenges the validity of a plea, the representations of the defendant, his lawyer, the prosecutor, and the judge "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). Such "[s]olemn declarations in open court carry a strong presumption of verity." *Id*. Indeed, "[b]ecause courts must be able to rely on a defendant's statements during a plea colloquy,

'allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *Caruthers v. United States*, No. 3:07-cr-635, 2008 WL 413631, at *5 (M.D. Tenn. Feb 12, 2008) (quoting *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005)). Therefore, "'the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.'" *Posey v. United States*, No. 3:20-cv-121, 2020 WL 2129235, at *9 (M.D. Tenn. May 5, 2020) (quoting *Lemaster*, 403 F.3d at 221–22). That is because "[t]he plea colloquy process exists in part to prevent defendants from making such claims [of misrepresentation and a lack of understanding]." *Barnett v. United States,* No. 2:10-cr-116, 2017 WL 160896, at *4 (E.D. Tenn. Jan. 13, 2017) (citing *Ramos v. Rogers*, 170 F.3d 560, 560–66 (6th Cir. 1999)). "Otherwise, a defendant could plead guilty in the hope of obtaining favorable treatment during sentencing while reserving the right to raise all manner of constitutional claims if the result of the sentencing process was not as he had hoped." *Id.* at *7.

Accordingly, "no hearing is required if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also Napier v. United States*, No. 93-5412, 1993 WL 406795, at *2 (6th Cir. Oct. 8, 1993) ("To be entitled to a hearing, the prisoner must set forth detailed factual allegations which, if true, would entitle him to relief under § 2255."

(citing, among authorities, *Machibroda v. United States*, 368 U.S. 487, 496, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962))); *cf. Valentine v. United States*, 488 F.3d 325, 334 (6th Cir. 2007) (finding that the burden is met where the petitioner "offers more than a mere assertion of his innocence; he presents a factual narrative of the events that is neither contradicted by the record nor 'inherently incredible'"). Where (as here) the judge considering the § 2255 motion also presided over the sentencing hearing, the judge may rely on his or her recollections of those proceedings. *See generally Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996) (citation omitted).

The Court finds that an evidentiary hearing is not warranted in the present case. The undisputed facts in the record demonstrate that Perez-Pineda's motion to vacate is time-barred, and both motions are otherwise entirely without merit.

### III. DISCUSSION

#### A. § 2255 Motion to Vacate

The government argues that Perez-Pineda's § 2255 motion should be denied on two grounds. First, it argues that the motion should be denied as untimely. (Doc. No. 47, at 5–9.) Second, it argues that, to the extent Perez-Pineda makes a timely claim, it should be denied on the merits. (*Id.* at 9–14.)

##### 1. Perez-Pineda's Motion is Time-Barred

The Anti-Terrorism and Effective Death Penalty Act ("ADEPA") "provides a one-year statute of limitations for filing a federal habeas petition." *Cleveland v. Bradshaw*, 693 F.3d 626, 631 (6th Cir. 2012). Specifically, a prisoner must file his § 2255 motion within one year of the latest of:

>(1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Here, the judgment of conviction was entered on April 29, 2022. (Doc. No. 35.) The Sixth Circuit dismissed Perez-Pineda's appeal on March 21, 2023. (Doc. No. 42.) Finality attached 91 days[2] afterwards on June 20, 2023, when the time for filing a certiorari petition expired. *Clay v. United States*, 537 U.S. 522, 527, 123 S. Ct. 1072, 155 L. Ed. 2d 88 (2003); Sup. Ct. R. 13.3. Perez-Pineda was required, therefore, to file his § 2255 motion by June 20, 2024. Instead, he filed the instant motion on August 5, 2025, over one year after the limitations period had expired. (*See* Doc. No. 44.) Accordingly, the motion is not timely under § 2255(f)(1).

Perez-Pineda does not identify an impediment created by the government, a new right that was originally recognized by the Supreme Court and made retroactively applicable to cases on collateral review, or newly discovered facts supporting his claims that he subsequently discovered only after exercising due diligence. *See* § 2255(f)(2)–(4). Instead, Perez-Pineda acknowledges that his motion is untimely but insists that "[c]ounsel fail[ed] to inform Movant about the dismissal of the appeal [which] took away Movant's rights to file his timely 2255 petition" and that "[h]ad counsel not made this critical error and informed Movant about the appeal dismissal[,] Movant

---

[2] Because 90 days from April 29, 2022 was a federal legal holiday, the period extended until the end of the next day. *See* Sup. Ct. R. 30.

6

would not have been statuted [sic] barred from filing this 2255 petition." (Doc. No. 44, at 10.)

Because § 2255(f) is not a jurisdictional bar, it is subject to equitable tolling under extraordinary circumstances. *Reed v. United States,* 13 F. App'x 311, 312 (6th Cir. 2001) (citation omitted). To warrant tolling under traditional equitable principles, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida,* 560 U.S. 631, 649, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010) (quoting *Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)); *see Jefferson v. United States*, 730 F.3d 537, 549 (6th Cir. 2013) (quoting *Holland*, 560 U.S. at 649). The Sixth Circuit has repeatedly made clear its view that "equitable tolling relief should be granted only sparingly." *See Amini v. Oberlin Coll.,* 259 F.3d 493, 500 (6th Cir. 2001) (citations omitted). "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000) (citation omitted). Motions seeking tolling are evaluated on "a case-by-case basis, with the petitioner retaining the 'ultimate burden of persuading the court that he or she is entitled to equitable tolling.'" *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 462 (6th Cir. 2012) (quoting *Ata v. Scutt,* 662 F.3d 736, 741 (6th Cir. 2012)); *see Menominee Indian Tribe of Wisc. v. United States*, 577 U.S. 250, 256, 136 S. Ct. 750, 193 L. Ed. 2d 652 (2016) (recognizing that the petitioner bears the burden of proof and must satisfy both prongs of the test to be entitled to equitable tolling (collecting cases)). Here, Perez-Pineda has not provided sufficient grounds to be entitled to equitable tolling.

In particular, Perez-Pineda has not demonstrated that he pursued his rights diligently. Even

assuming that counsel did not inform him of the dismissal of his appeal, Perez-Pineda has failed to demonstrate that he made any efforts to ascertain the status of his appeal for over two years. This strongly cuts against the notion that Perez-Pineda had been diligently pursuing his rights as required to invoke equitable tolling. *See, e.g.*, *Robinson v. Easterling*, 424 F. App'x 439, 443 (6th Cir. 2011) (finding no reasonable diligence where the petitioner "sat on his rights for a year and a half" without making further inquiries about his case status); *Whiteside v. United States*, No. 20-6144, 2021 WL 1400908, at *2 (6th Cir. Feb. 12, 2021) (concluding petitioner did not diligently pursue his appellate rights when he waited almost two years to request a docket sheet before filing his petition); *United States v. Taylor*, No. 2:19-cr-33, 2024 WL 5710752, at *2 (E.D. Ky. Jan. 11, 2024) (recognizing that "[a]s a general matter . . . a movant who passively awaits a decision does not exercise reasonable diligence" (citation omitted)), *report and recommendation adopted,* 2025 WL 1483692 (E.D. Ky. May 23, 2025); *Sluss v. United States*, No. 2:13-cr-90, 2019 WL 4195132, at *5 (E.D. Tenn. Sept. 4, 2019) (denying equitable tolling because nothing alleged by petitioner or in the record suggested he was reasonably diligent in checking the status of his direct appeal).

Perez-Pineda claims that "[he] could not file what [he] did not know about." (Doc. No. 48 (Reply Brief), at 2.) He represents that he "repeatedly reached out to Mr. Hicks without success." (*Id.*) Therefore, he "never sat on his rights in any fashion, rather he did all he could possibly do under the circumstances." (*Id.*) But counsel's alleged failure to notify Perez-Pineda and his subsequent unresponsiveness did not excuse Perez-Pineda from determining the status of his appeal. Perez-Pineda could have instead directly inquired about the status of his case from Clerk's Office of the Northern District of Ohio or the Sixth Circuit. *See Mendenhall v. United States*, No.

3:05-cr-53, 2012 WL 441196, at *2 (E.D. Tenn. Feb. 10, 2012) (concluding petitioner did not diligently pursue his rights because, even though defense counsel was unresponsive, "[t]here was nothing . . . preventing petitioner or a member of his family from contacting the Clerk's Office[.]"). Perez-Pineda's conclusory statements that he diligently exercised his rights are without support in the record.

The Court concludes that Perez-Pineda's § 2255 motion is untimely and that he has not demonstrated that he diligently pursued his rights such that equitable tolling would be warranted. Because his motion to vacate is time-barred, and equitable tolling is not available, Perez-Pineda is not entitled to relief pursuant to 28 U.S.C. § 2255.

### 2. *Perez-Pineda's Motion is Insufficient as a Matter of Law*

Even if the Court reached the merits of Perez-Pineda's motion, it would find no basis to vacate his sentence under 28 U.S.C. § 2255. Perez-Pineda alleges that his counsel, Donald Hicks ("Attorney Hicks"), provided ineffective assistance of counsel because: (i) he failed to challenge or object to the factual basis of the plea agreement under Fed. R. Crim. P. 11(b)(3); (ii) he failed to give adequate advice regarding the plea agreement; and (iii) he failed to inform Perez-Pineda about the dismissal of his direct appeal. (Doc. No. 44, at 4–6.) Perez-Pineda has failed to demonstrate that any of these alleged bases rise to the level of ineffective assistance of counsel.

"To prevail on an ineffective-assistance-of-counsel claim, [a petitioner] must satisfy the two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." *Wingate v. United States*, 969 F.3d 251, 255 (6th Cir. 2020). Specifically, the petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of

reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Strickland*, 466 U.S. at 687–88; *Williams v. Taylor*, 529 U.S. 362, 390–91, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The Court may address the *Strickland* prongs in any order and need not address both prongs if the petitioner "makes an insufficient showing on one." *See Wingate*, 969 F.3d at 955 (quotation marks and citation omitted).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010) (collecting cases). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id*. Counsel's performance must be evaluated from the perspective existing at the time of the representation, not from the perspective of hindsight. *Id*. Indeed, a prisoner must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment, and that counsel's errors were so serious as to deprive him of a fair trial. *Id*. at 687–88; *United States v. Hanley*, 906 F.2d 1116, 1120–21 (6th Cir. 1990); *Flippins v. United States*, 808 F.2d 16, 18 (6th Cir. 1987); *see also United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) ("Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." (citing *Strickland, supra*)).

First, Perez-Pineda argues that his guilty plea "was not supported by the factual basis for pleading guilty" and that Attorney Hicks provided ineffective counsel because he "failed to challenge or object to the factual basis of the plea agreement under Rule 11(b)(3)." (Doc. No. 44,

at 4.) It is worth noting that Rule 11(b)(3) outlines the obligation of the Court, *not defense counsel*, to "determine that there is a factual basis for the plea." But irrespective of this mistaken attribution, Perez-Pineda has not demonstrated that the guilty plea lacked a factual basis. Perez-Pineda argues that the plea agreement had an insufficient factual basis "because the [g]overnment combined the liquid [m]ethamphetamine with . . . processed kilos of [m]ethamphetamine . . . . giving the [g]overnment an incorrect calculation of the quanity [sic] of the kilos outlined in the plea agreement." (*Id.*) But the plea agreement was not based on Perez-Pineda's possession of *processed* methamphetamine. In the plea agreement, Perez-Pineda agreed "to plead guilty to the indictment in this case[,]" which was conspiracy "to manufacture and possess with intent to distribute 500 grams or more *of a mixture and substance* containing a detectable amount of methamphetamine, its salts, isomers, and salts of isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)." (Doc. No. 23, at 3; Doc. No. 1, at 1 (emphasis added).) More specifically, in the plea agreement Perez-Pineda agreed that "[he] and his codefendants knowingly and jointly possessed . . . approximately 63 kilograms of methamphetamine, *in both liquid and crystal form*[.]" (Doc. No. 23, at 10 (emphasis added).) Therefore, the fact that liquid methamphetamine was included in the government's calculation does not render the plea agreement without a factual basis.

Even assuming there was a miscalculation (which the Court finds did not happen), this would be immaterial to Perez-Pineda's plea agreement and his sentence. The factual basis of the plea agreement states that "members of the [Drug Enforcement Agency] surreptitiously seized approximately 63 kilograms of crystal methamphetamine [from a warehouse jointly possessed by

Perez-Pineda and his codefendants.]" (Doc. No. 23, at 10.) This would have put Perez-Pineda at the highest weight bracket in the sentencing guidelines, regardless of the allocation of liquid and processed amounts of methamphetamine. *See* U.S.S.G. § 2D1.1(c)(1). The Count concludes that the plea agreement was based on sufficient factual basis and that there are no grounds for arguing ineffective assistance of counsel on this issue. *See Miller v. United States*, No. 1:07-cv-763, 2009 WL 4250779, at *3 (W.D. Mich. Nov. 25, 2009) ("[C]ounsel is not required to make frivolous objections to avoid a charge of ineffective representation.") (quoting *Yannott v. United States*, 86 F.3d 1157 (6th Cir. 1996) (unpublished) (further citation omitted)).

Second, Perez-Pineda argues that "[c]ounsel failed to advise Movant about the legal and factual basis for pleading guilty . . . . If Movant knew that there was [an] insufficient factual basis for the plea agreement, Movant would not have entered into the plea agreement[.]" (Doc. No. 44, at 5.) As discussed above, Perez-Pineda has not demonstrated that the plea agreement lacked a sufficient factual basis. But even so, Perez-Pineda's assertions squarely contradict his in-court testimony. During the plea colloquy, Perez-Pineda represented to the Court that he had adequate time to review and discuss the plea agreement with his attorney and that he reviewed, understood, and agreed to each page of the plea agreement. (Doc. No. 41 (Change of Plea Transcript), at 17.) He initialed each page of the plea agreement indicating his understanding of and agreement with its contents. (*See generally* Doc. No. 23.) The Court proceeded to confirm his understanding of the plea agreement by going through the document paragraph-by-paragraph. (*See* Doc. No. 41, at 26–45.) Perez-Pineda specifically affirmed that he had reviewed the factual basis detailed in the plea agreement and did not raise any objections. (*Id.* at 40–41.) Indeed, when questioned about the

factual basis of the plea agreement, Perez-Pineda explicitly agreed that he engaged in the conduct contained therein and did so knowingly, voluntarily, and intentionally. (*Id.* at 41.) Attorney Hicks also represented to the Court that he had reviewed the factual basis and relevant conduct section of the plea agreement with his client Perez-Pineda. (*Id.* at 42.) Throughout this colloquy, the Court repeatedly questioned Perez-Pineda whether he understood what he was agreeing to and provided him ample opportunity to confer with Attorney Hicks and object if he so desired. (*See id.* at 41–43.) Finally, Perez-Pineda stated that he was fully satisfied with the legal services and advice provided by his attorney. (*Id.* at 46.) The Court concludes that Perez-Pineda was sufficiently informed about the legal and factual bases of his guilty plea in light of his sworn testimony at the plea hearing. S*ee United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (citations omitted) (observing that a defendant cannot ordinarily refute their sworn testimony from their plea hearing when challenging the validity of his guilty plea).

Finally, Perez-Pineda asserts that counsel was ineffective because his "fail[ure] to timely inform Movant about the dismissal date . . . caused Movant to miss the filing deadline to file a 2255 petition in the [one] year required by the rules." (Doc. No. 44, at 6.) Even if the Court accepts as true Perez-Pineda allegation that Attorney Hicks did not provide him with updates regarding his appeal, and this was able to excuse his failure to diligently pursue his rights (which it cannot), any miscommunication on counsel's part could not have caused Perez-Pineda prejudice, as his motion would have been denied on the merits. Attorney Hicks's alleged failure, therefore, caused Perez-Pineda no prejudice because it could not have had a material effect on the outcome of Perez-Pineda's instant § 2255 motion.

In summary, Perez-Pineda has not identified any conduct by Attorney Hicks that fell below an objective standard of reasonableness and caused Perez-Pineda prejudice. As such, Perez-Pineda's § 2255 motion would also fail on the merits.

### B. Motion Challenging Legality of Conviction

Perez-Pineda also filed a motion styled, "Motion for Authority to File Action to Test Legality of Conviction." (Doc. No 45.) While the basis for the motion is not entirely clear, Perez-Pineda appears to challenge the legality of his conviction and sentence "based on [claims of] actual innocence, newly discovered evidence, and violation of due process[.]" (*Id.* at 1.) In actuality, however, Perez-Pineda provides no new evidence demonstrating his innocence or the plea agreement's alleged illegality.

Much of the motion reiterates arguments raised in the § 2255 motion. (*See generally id.*) The Court need not repeat its analysis. To the extent that Perez-Pineda argues that the plea agreement lacks sufficient factual basis or that he was provided with ineffective assistance of counsel, the Court rejects these arguments for the reasons discussed in § III(A), *supra*.

Perez-Pineda also claims that the statement he made during his allocution at sentencing—"I am not a criminal and I am not a drug dealer"—is not a confession and cannot serve as the basis for a drug conviction.[3] (Doc. No. 45, at 1 (citing Doc. No. 39, at 19.) But, as already discussed, Perez-Pineda previously entered a plea of guilty under oath and with full understanding of the plea

---

[3] Perez-Pineda contends in his reply brief that this statement was "the only sworn statement of Petitioner in the entire case[.]" (Doc. No. 48, at 3.) This is entirely incorrect; Perez-Pineda gave statements under oath throughout his change of plea hearing, after being sworn in and advised that by entering a guilty plea he would be making statements against his interest that would likely incriminate him. (*See* Doc. No. 41, at 10–11.)

agreement's terms, and during his plea colloquy he admitted that he was guilty of the conduct described in the agreement. (*See generally* Doc. No. 41.) The Court rejects Perez-Pineda's *post-facto* efforts to disavow a guilty plea that was knowingly, intelligently, and voluntarily made. Perez-Pineda has, therefore, failed to establish a basis to set aside his conviction.

The remainder of Perez-Pineda's allegations can be summarily dismissed because they blatantly contradict his own sworn testimony. He alleges that his plea was coerced, that he was unaware of his rights, and that he believed his plea would result in him receiving "a light sentence of three to four years." (Doc. No. 45, at 2–3.) These allegations are belied by the record from the change of plea hearing wherein, under oath, Perez-Pineda stated that: (i) he understood that by entering into the plea agreement he was giving up his known constitutional rights (Doc. No. 41, at 18, 21, 36–37, 46, 48); (ii) his plea was made freely and voluntarily (*id.* at 47); (iii) he was aware that the charge he pleaded guilty to carried a mandatory minimum sentence of at least ten years[4] (*id.* at 41); (iv) his change of plea was made without force, coercion, or threat (*id.* at 47); and (v) he fully understood the terms and conditions of the plea agreement (*id.*). Perez-Pineda's sworn statements made in-court are afforded a strong presumption of truth. *See Blackledge*, 431 U.S. at 74. Moreover, to the extent that he argues that his counsel erred in advising him on the likely consequences of his plea, it is well settled that "a proper plea colloquy is generally deemed to cure

---

[4] During the change of plea hearing, the Court conveyed to Perez-Pineda that he faced "a minimum term of imprisonment of ten years up to life imprisonment, a maximum statutory fine of $10 million, a minimum of five years of supervised release up to a maximum period of supervised release for life, and a special assessment of $100." (Doc. No. 41, at 25–26.) Perez-Pineda responded that he understood all of this. (*Id.* at 26.) Thereafter, the Court discussed with Perez-Pineda the likely sentencing ranges under the federal sentencing guidelines, based on various calculations of his total offense level and his criminal history. The most conservative estimate of his guideline range, assuming a maximum of three levels for acceptance of responsibility, was 235 to 293 months. (Doc. No. 41, at 34–35.) Again, Perez-Pineda acknowledged he understood. (*Id.*)

15

any misunderstanding the defendant may have had about the consequences of his plea." *United States v. Pola*, 703 F. App'x 414, 423 (6th Cir. 2016) (further citation omitted)); *see Thompson v. United States*, 728 F. App'x 527, 535 (6th Cir. 2018) (noting that the "Sixth Circuit has consistently upheld the validity of the plea-colloquy advisement of rights to preclude later claims of misunderstanding alleged to result from misleading advice"). As discussed, *supra*, having engaged in the Court's Rule 11 plea colloquy, Perez-Pineda cannot claim in good faith that he misunderstood the consequences of pleading guilty.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Perez-Pineda's motion to vacate and motion challenging the legality of his conviction. Further, for the same reasons, the Court finds that "reasonable jurists" would not debate the Court's dismissal of Perez-Pineda's motions. *See Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Accordingly, the Court certifies that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: November 26, 2025

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**